IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ADRIANE R. ANDERSON-STRANGE,

Plaintiff;

v.

Civil Action No. 17-1859-RGA

NATIONAL RAILROAD PASSENGER
CORPORATION, t/d/b/a AMTRAK,

Defendant.

## MEMORANDUM OPINION

David B. Anthony, BERGER HARRIS LLP, Wilmington, DE; Sean A. Meluney (argued),
BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP, Wilmington, DE, attorneys for
Plaintiff.

Lindsay M. Neinast (argued) and Alison N. Davis, LITTLER MENDELSON P.C., Washington,
DC, attorneys for Defendant.

June $\underline{11}$ , 2019

**ANDREWS, U.S. DISTRICT JUDGE:**

Currently pending before the Court is Defendant's Motion for Summary Judgment. (D.I. 58). The parties have fully briefed the issues. (D.I. 59, 64, 67). I heard helpful oral argument on May 17, 2019. (Hr'g Tr.). For the following reasons, I grant Defendant's motion.

## I.    BACKGROUND

Plaintiff Adriane R. Anderson-Strange filed this suit against Defendant National Railroad Passenger Corporation ("Defendant" or "Amtrak") on December 27, 2017, alleging that Defendant violated Title VII of the Civil Rights Act. (D.I. 1). After Plaintiff retained counsel, she filed a First Amended Complaint setting out two specific causes of action: (1) violation of Title VII through unlawful discrimination based on Plaintiff's gender and (2) violation of Title VII through unlawful retaliation. (D.I. 13 ¶¶ 46-59). The parties have completed discovery and Defendant has moved for summary judgment on all counts. (D.I. 58).

Plaintiff began her employment with Amtrak in 1986. (D.I. 59 at 2; D.I. 64 at 2). Until 2014, Plaintiff worked in a variety of non-management positions where her jobs and pay rate were governed by the collective bargaining agreement between Amtrak and Plaintiff's union. (D.I. 59 at 2; D.I. 64 at 2). Though Plaintiff was not employed in an official management role, she had some supervisory experience from periodically filling in for her predecessor. (D.I. 59 at 4; D.I. 64 at 2). The parties agree that before the relevant time period, Plaintiff had been disciplined once during her employment with Amtrak. (D.I. 59 at 2 n.1; D.I. 64 at 2).

On February 24, 2014, Plaintiff applied for the position of District Manager of the Wilmington Station. (D.I. 59 at 3; D.I. 64 at 2). After Plaintiff applied, the job posting was cancelled, and the position was reclassified to Station Manager I, which is the lowest management tier. (D.I. 59 at 3; D.I. 64 at 2). Plaintiff re-applied and was hired for the position, effective on

May 9, 2014. (D.I. 59 at 3; D.I. 64 at 3). Plaintiff's annual salary after her promotion was $62,700. (D.I. 59 at 3; D.I. 64 at 3). In September 2014, Plaintiff received a raise, which increased her salary to $64,894. (D.I. 59 at 4). The parties agree that Plaintiff earned a lower salary than her male predecessor and other male Station and District Managers. (*Id.*; D.I. 64 at 3).

On January 14, 2015, Plaintiff filed a Career and Compensation Structure Appeal form, appealing the zone and title of her position, but not the salary band. (D.I. 65-1, Ex. 13). The appeal did not allege that Plaintiff believed that her current zone, title, or salary was the result of gender discrimination. (*Id.*). Specifically, the appeal identified the following complaints: (1) the duties of the position had not changed from when her predecessor held it, (2) the Wilmington station was ranked tenth in the country in revenue and had a high volume, (3) the position had sixteen direct reports, (4) requests relating to the unstaffed Newark, Delaware station were common and she had to use her personal vehicle to handle such requests, (5) "VIP moves" were common, and (6) according to the criteria for job categorization, "there seem[ed] to be a few discrepancies that [we]re questionable." (*Id.*). Plaintiff also identified four comparator positions by title and stations along with some relevant information about those positions. (*Id.*). Three of the identified comparator positions in Plaintiff's appeal were held by men, while one was held by a woman. (D.I. 60[1] at 12-13).

Amtrak denied the appeal on March 9, 2015. In its response, Amtrak stated that the "job duties of [Plaintiff's] position are consistent with a C-2 band and zone under Amtrak's new Career & Compensation structure." (D.I. 65-1, Ex. 15). After the appeal, Plaintiff contacted the office of United States Senator Chris Coons. On July 21, 2015, Senator Coons' office sent a letter to Barry

[1] Defendant has consecutively numbered this document using the form "App000." When citing to D.I. 60, I will not use "App," and will solely use the page numbers at the end of this form.

Melnkovic, an Amtrak Executive Vice President and Chief Human Capital Officer. (D.I. 65-1, Ex. 16). The letter stated that the Plaintiff felt her current classification was wrongly calculated and requested an explanation of the metrics for job classification. (*Id.*). The letter nowhere explicitly referenced a belief that the classification was based upon gender. (*Id.*). In Amtrak's September 30, 2015 response, it provided a direct comparison of Plaintiff's position and the Baltimore/Aberdeen Station Manager II position. (D.I. 65-1, Ex. 17).

| Station | Passenger Total | Passenger Rank | Revenue Total | Revenue Rank | Positions Reporting |
|---|---|---|---|---|---|
| Wilmington | 704,523 | 11 | $63.8 million | 11 | 16 |
| Newark | 12,418 | 316 | $0.9 million | 270 | -- |
| Total | 716,941 | -- | $64.7 million | -- | 16 |
| Baltimore | 1,032,527 | 7 | $91.4 million | 6 | 40 |
| Aberdeen | 42,345 | 176 | $2.5 million | 146 | -- |
| Total | 1,074,872 | -- | $93.9 million | -- | 40 |

(*Id.*).

Throughout 2015, Plaintiff's supervisor, Lauren Anderson, identified and documented performance problems, including insubordination. (D.I. 65-1, Exs. 19, 20). On February 24, 2016, Plaintiff was placed on a performance improvement plan. (*Id.* at Ex. 19). Plaintiff completed the performance improvement plan on May 6, 2016 but was informed that there were still areas where improvement was needed. (*Id.* at Ex. 22). On September 20, 2016, Ms. Anderson forwarded Plaintiff an email which instructed "that no one is approve[d] to order items for [Employee] Appreciation day.... Any charges that are received ... will be denied." (*Id.* at Ex. 27). Plaintiff repeatedly objected to this instruction. (*Id.*). Ms. Anderson sent a follow-up email stating "these tokens of our appreciation will be the only acknowledgement of Employee Appreciation Day this year." (*Id.*). Despite this instruction, Plaintiff decided to host a luncheon for Employee Appreciation Day and sought reimbursement for the expenses. (*Id.*; D.I. 60 at 202-10). Plaintiff's

3

request was rejected. (D.I. 60 at 203-05). After being told that her request would not be approved because it was not consistent with the instructions for Employee Appreciation Day, Plaintiff resubmitted the request anyway. (*Id.* at 208-10).

On October 11, 2016, Plaintiff was terminated by her supervisor and held out of service from returning to a union position. (D.I. 65-2, Ex. 28; D.I. 60 at 113). Despite being held out of service, Plaintiff attempted to "displace" back into a union position three days later, on October 14, 2016, and entered a restricted area to do so. (D.I. 65-2, Ex. 29). After a disciplinary hearing under the collective bargaining agreement, Plaintiff was terminated from all capacities, including any union position. (*Id.*).

## II.    LEGAL STANDARD

### A. Summary Judgment

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of proving the absence of a genuinely disputed material fact relative to the claims in question. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). Material facts are those "that could affect the outcome" of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The burden on the moving party may be discharged by pointing out to the district court that there is an absence of evidence supporting the non-moving party's case. *Celotex*, 477 U.S. at 323.

The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986);

4

*Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460–61 (3d Cir. 1989). A non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1).

When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 247–49. If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp.*, 477 U.S. at 322.

### B. Title VII

Title VII discrimination and retaliation claims are governed by the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). First, the plaintiff must establish a prima facie case of the complained-of discrimination or retaliation. *Id.* at 802. Once a prima facie case has been established, the burden shifts to the employer to articulate a legitimate nondiscriminatory reason for the alleged adverse employment action. *Id.* at 802-03. After the employer proffers a reason for the action, the burden shifts back to Plaintiff to establish that the employer's articulated rationale is pretext. *Id.* at 804. "To avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons

5

must allow a factfinder reasonably to infer that *each* of the employer's proffered non-discriminatory reasons was either a *post hoc* fabrication or otherwise did not actually motivate the employment action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994) (cleaned up).

## III.    DISCUSSION

### A. Pay Discrimination Claim

Plaintiff alleges that she was paid a lower salary than other employees doing the same or similar work because of her gender. When alleging pay discrimination under Title VII, courts have imported the test from the Equal Pay Act. Thus, to establish a prima facie case of pay discrimination under Title VII, Plaintiff must show that "(1) [t]he work of the employees of one sex required the exercise of substantially equal skill, effort, and responsibility and was performed under working conditions similar to that of employees of the opposite sex; and (2) the pay to men and women was unequal." *Ferguson v. E.I. duPont de Nemours & Co.*, 560 F. Supp. 1172, 1195 (D. Del. 1983). At step two of the *McDonnell Douglas* framework, Defendant must articulate one of the following rationales for the pay differential: (1) a seniority system, (2) a merit system, (3) a system measuring earnings by quantity or quality of production, or (4) any factor other than sex, which may include education, experience, prior salary, or any other factor related to performance of the job. *Puchakjian v. Twp. of Winslow*, 804 F. Supp. 2d 288, 294-95 (D.N.J. 2011), *aff'd* 520 F. App'x 73 (3d Cir. 2013). If Defendant meets its burden of production, Plaintiff must show that the proffered reason is pretextual by demonstrating such "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Fuentes*, 32 F.3d at 765 (cleaned up).

6

### 1. Prima Facie Case

Plaintiff has established a prima facie case of pay discrimination under Title VII. She has identified male employees in her same position—Ron Edwards, her predecessor,[2] and Leon Pereira, her successor—with the same responsibilities and work conditions. (D.I. 64 at 16). She has also provided undisputed evidence that both Edwards and Pereira received higher salaries. (D.I. 60 at 221, 239).

### 2. Proffered Non-Discriminatory Rationale

Defendant has met its burden of production by proffering the following rationales for the pay differentials between Plaintiff and the identified male managers. First, Defendant states the difference in title and pay band of Plaintiff's position from that of her predecessor is the result of Amtrak's nationwide management restructuring plan, which was intended to reflect the differences in complexity and scope of management positions. The factors considered in determining the title and pay band include the number of stations managed, the types of stations managed, the size of the territory managed, ridership, revenue, and the number of direct reports. (D.I. 59 at 13-14). Second, Defendant argues that even if Plaintiff's position had been classified as a Station Manager II, Plaintiff's salary would not have increased because Defendant's standard practice is to base the initial salary of managers on their prior salary. (*Id.* at 14-15). Third, Defendant asserts Plaintiff was not treated differently from other new managers and received the maximum raise from her union salary when she entered the position. (*Id.* at 13-14). Fourth, Defendant argues the pay differential between Plaintiff, her predecessor, and successor reflects differences in management experience and prior salary. (*Id.*).

---

[2] Mr. Edwards held the position before the position was reclassified.

7

### 3. Pretext

As Defendant has met its burden of production, to survive summary judgment, Plaintiff must produce evidence from which a reasonable jury could conclude that Defendant's proffered reasons for the pay differential are pretextual. Plaintiff argues that comparator evidence demonstrates that Defendant's reasons are pretextual. (D.I. 64 at 15-17). Defendant asserts that Plaintiff has not identified any appropriate comparator and that "no reasonable jury could conclude that Plaintiff's gender was the reason for the difference between her salary and any purportedly comparable male employee's salary." (D.I. 59 at 15).

Plaintiff's argument for pretext is two-fold. First, Plaintiff argues that Amtrak's proffered reasons for the reclassification of her position are pretextual because the positions held by Bradley Webber and Charles McHugh, which are classified differently, have similar job responsibilities. (D.I. 64 at 2-3, 16). Second, Plaintiff argues that Amtrak's reasons for the disparity in salary between her, her successor, Leon Pereira, and her predecessor, Ron Edwards, are pretextual. (*Id.* at 16). Defendant disputes that any of these men are appropriate comparators as they are not similar in all relevant respects. (D.I. 59 at 17).

#### a. Reclassification of Plaintiff's Position

Plaintiff has not provided evidence rebutting the existence of Amtrak's nationwide classification system, nor has she shown evidence indicating any inconsistency in Amtrak's rationale for the classification of Plaintiff's station. Plaintiff offers two comparators to show a purported inconsistency in Amtrak's rationale for her position's title and salary reclassification: Webber and McHugh. Defendant disputes that Webber and McHugh are appropriate comparators. The table below summarizes the purported comparator evidence.

| | Plaintiff | Webber | McHugh |
|---|---|---|---|
| Title | Station Manager I | District Manager II | Station Manager II |
| Stations Managed | Wilmington (m) Newark (u) | Harrisburg (m) Lancaster (m) Altoona (m) Johnstown (m) Pittsburgh (m) | Altoona (m) Johnstown (m) Pittsburgh (m) |
| Geographic Territory[3] | 14.8 miles | 222 miles (Pittsburgh to Lancaster) | 97 miles (Pittsburgh to Altoona) |
| Direct Reports | 16 | 17 | 15 |
| Highest Salary 2014-2016 | $64,895 | $93,245 | $ 80,939 |
| Management Experience | Acting Station Manager (intermittent) since 2007 | 2002 | 2007 |
| 2015 Ridership | 712,977 | 1,249,009 | 199,072 |

(D.I. 60 at 222-23; D.I. 65-1, Ex. 10 at 4,7).

Defendant has consistently proffered the following as criteria it examined in its reclassification of positions in Amtrak: the number of stations managed, the types of stations managed, the size of the territory managed, ridership, revenue, and the number of direct reports. (D.I. 59 at 13-14). Even taking the evidence as summarized in the table above in the light most favorable to Plaintiff, as I am required to do, it is consistent with Amtrak's classification of Plaintiff's position. While all three positions supervise a similar number of direct reports, McHugh and Webber both managed more stations than Plaintiff across a larger geographic territory. Plaintiff managed a single manned station and a single unmanned station roughly 15 miles apart. In contrast, Webber managed five manned stations across a 222-mile territory with significantly more ridership. McHugh managed three manned stations across a 97-mile territory. Additionally, because Webber and McHugh managed more manned stations, the direct reports they supervised were also spread across the multiple stations. These differences between the positions are all consistent with Amtrak's proffered rationale for reclassifying Plaintiff's position.

---

[3] I take judicial notice of the driving distance between the stations.

The undisputed evidence also shows that McHugh and Webber are not appropriate comparators because they are not similarly situated in terms of their job responsibilities or working conditions for the reasons stated above. Moreover, both McHugh and Webber also had significantly more management experience than Plaintiff, having begun their management positions in 2007 and 2002 respectively.

### b. Salary Disparity Between Plaintiff and Male Successor/Predecessor

Plaintiff has not presented any evidence from which a jury could conclude that Defendant's rationale for the pay disparity between Plaintiff, Edwards, and Pereira was pretextual. The table below summarizes the purported comparator evidence.

|  | Plaintiff | Pereira | Edwards |
|---|---|---|---|
| Title | Station Manager I | Station Manager I | District Manager |
| Stations Managed | Wilmington (m) Newark (u) | Wilmington (m) Newark (u) | Wilmington (m) Newark (u) |
| Highest Salary 2014-2016 | $64,895 | $78,349 (2017) | $80,376 |
| Management Experience | Acting Station Manager (intermittent) since 2007 | April 2009 | September 2003 |
| Starting Salary | $62,700 | $78,349 | $60,000 |
| Previous Salary | $56,701 | $78,349 | -- |

(D.I. 60 at 221, 239).

As to Edwards, Plaintiff has provided no evidence contradicting Defendant's explanation that Edwards had more management experience than Plaintiff. Regarding Pereira, Plaintiff complains that he was paid more despite having no operational experience. However, the undisputed evidence shows that Pereira had more formal management experience than Plaintiff, that his salary in his previous position was higher than Plaintiff's previous salary, and that, unlike Plaintiff, Pereira did not receive a raise when he became a Station Manager. (D.I. 60 at 239). Plaintiff has provided no evidence rebutting these reasons for Pereira's salary.

10

Neither has she provided evidence to show that Plaintiff was treated differently than other first-time managers being promoted from a union position. While Plaintiff appears to dispute her previous salary (Hr'g Tr. at 37:17-39:5), the record indicates that Plaintiff's hourly rate translated to a previous salary of $56,701. (D.I. 65-1, Ex. 2 (Plaintiff's application states salary in previous position as $56,500); D.I. 59 at 3 n.2 (citing D.I. 62 ¶ 5)). Plaintiff has not presented any evidence showing that male managers were treated more favorably when starting their management positions. In fact, when Edwards started as the District Manager of the Wilmington station, he was paid less than Plaintiff was paid when she started. This is consistent with Defendant's explanations of how it structures management salaries. (D.I. 59 at 13-14). Additionally, Pereira did not receive a raise when he began as the Wilmington Station Manager, unlike Plaintiff. (D.I. 60 at 239).

Thus, Plaintiff has provided no evidence from which a jury could conclude that the rationales offered for her lower salary were pretextual. Therefore, I will grant Defendant's motion for summary judgment of no pay discrimination under Title VII.

## B. Termination Claim

To establish a prima facie case of non-pay related gender discrimination under Title VII, Plaintiff must establish that (1) she is a member of a protected class, (2) an adverse employment action was taken against her, and (3) the circumstances of the adverse action give rise to an inference of discrimination. *Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313, 319 (3d Cir. 2000). After Plaintiff establishes a prima facie case, the burden shifts to Defendant to articulate a legitimate and nondiscriminatory reason for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802-03. After the employer proffers a reason for the action, the burden shifts back to Plaintiff to establish that the employer's articulated rationale is pretextual. *Id.* at 804.

11

### 1. Prima Facie Case

Plaintiff is a woman, which is a protected class under Title VII and satisfies the first element of the prima facie case. It is undisputed that Plaintiff was terminated on October 11, 2016. Termination is an adverse employment action that satisfies the second prong. I will assume for the purposes of this motion that Plaintiff has made a prima facie case by establishing that the circumstances give rise to an inference of discrimination.

### 2. Proffered Non-Discriminatory Rationale

Defendant has articulated a legitimate and nondiscriminatory rationale for Plaintiff's termination: "It lost faith in her ability to perform adequately the job after performance counseling failed to correct the insubordinate behavior and deficiencies that Ms. Anderson identified." (D.I. 59 at 16). Specifically, Defendant has identified that (1) Plaintiff had consistent performance problems throughout 2015 (D.I. 65-1, Ex. 10 at 23, Exs. 19-20); (2) Plaintiff was placed on a Performance Improvement Plan (*id.* at Ex. 19); (3) while Plaintiff satisfactorily completed her Performance Improvement Plan, she was informed that certain areas still needed work (*id.* at Ex. 10 at 23, Ex. 11 at 122, Ex. 22); and (4) shortly thereafter, Plaintiff disregarded management's instruction regarding appropriate expenses for Employee Appreciation Day (*id.* at Ex. 10 at 14, 24, Ex. 11 at 125-26).

Additionally, Defendant explains that at the time of her termination and afterwards, Plaintiff engaged in conduct that led to her termination from union positions in Amtrak. (D.I. 59 at 12). Specifically, Defendant identified the insubordinate behavior while Station Manager, the use of racial epithets at the time of her termination, the attempt to displace while being held out of service, and improperly accessing a restricted area. (D.I. 65-1, Ex. 29).

12

### 3. Pretext

To establish that Defendant's proffered rationales for Plaintiff's termination are pretextual, Plaintiff may show "that [Defendant] has treated more favorably persons not within the protected class," *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 645 (3d Cir. 1998), or such "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them unworthy of credence." *Fuentes*, 32 F.3d at 765 (cleaned up).

#### a. Comparators

Plaintiff may show that she was treated less favorably by identifying similarly situated comparator employees who are not within the protected class. "[T]o be considered similarly situated, comparator employees must be similarly situated in all relevant respects." *Wilcher v. Postmaster Gen.*, 441 F. App'x 879, 882 (3d Cir. 2011); *see also Opsatnik v. Norfolk Southern Corp.*, 335 F. App'x 220, 222-23 (3d Cir. 2009). To determine whether employees are similarly situated, courts should consider relevant factors, which may include the employees' job responsibilities, the supervisors and decision-makers, whether the employees were subject to the same standards, and the nature of the misconduct. *Wilcher*, 441 F. App'x at 882; *Opsatnik*, 335 F. App'x at 223. There is no per se rule that purported comparators with different supervisors are irrelevant. *Opsatnik*, 335 F. App'x at 223 (citing *Sprint/Mgmt Co. v. Mendelsohn*, 552 U.S. 379, 386 (2008)).

Plaintiff has identified the following purported male comparators for the purpose of her termination claim: Fell, Osborne, Annone, S. Smith, Wilkerson, A. Smith, and McHugh. (D.I. 64 at 12-13). Plaintiff's comparator pretext theory is two-fold. First, she alleges that Fell, Osborne, Annone, and S. Smith were not terminated from their management positions for their misconduct.

13

(*Id.* at 12). Second, she argues that Wilkerson, A. Smith, and McHugh were allowed to displace back into union positions after being terminated from their management positions.[4]  (*Id.* at 13).

However, Plaintiff's identified comparators are not similarly situated to Plaintiff such that a reasonable jury could infer pretext. It is undisputed that Fell, Osborne, Annone, and S. Smith worked in Amtrak's Mechanical Department at a facility in Bear, Delaware, reported to and were disciplined by a different direct supervisor, and were in a different supervisory chain than Plaintiff. (D.I. 66 at 4; D.I. 68 at 11-13). Moreover, these purported comparators engaged in different misconduct than Plaintiff; they were suspended for violating the Conflict of Interest Policy by accepting prohibited gifts, while Plaintiff was terminated from her management position for performance issues and insubordination. (D.I. 64 at 12). Plaintiff alleges that these men were disciplined by Melnkovic, the Amtrak manager who received the letter from Senator Coons' Office and who she alleges was involved in her own termination. (*Id.* at 16). The record does not support an inference that Melnkovic was actively involved in Plaintiff's termination or the termination of the purported comparators. (D.I. 66; D.I. 65-1, Ex. 24; D.I. 65-2, Exs. 28-29). Moreover, the purported comparators are not similarly situated and therefore cannot provide evidence of pretext:

---

[4] Defendant argues that I am precluded from addressing this issue under the Railway Labor Act ("RLA") because it would require interpretation of the Collective Bargaining Agreement ("CBA"). (D.I. 59 at 11 n.7). The RLA provides a mandatory arbitration scheme for adjudicating minor disputes, that is, disputes involving the interpretation or application of existing labor agreements. *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 256 (1994). This mechanism therefore preempts causes of action to enforce rights that are dependent on the CBA between the employee and the employer. However, substantive protections independent of the CBA are not preempted by the RLA. *Id.* at 257. Thus, if Plaintiff's gender discrimination claim, specifically her inability to return to a union position, requires interpretation of the CBA, then I am preempted from considering it.

   Plaintiff's discrimination claim rests on the purported differential treatment that she received when Defendant opposed her displacement into a union position under the CBA while it did not do so for male managers. The source of her claim is independent from the CBA as it stems from Title VII and public policy against discrimination in employment. Moreover, I do not understand Plaintiff's claim to be dependent upon interpreting the terms of the CBA. I understand the focus of Plaintiff's claim to be upon Defendant's opposition to her displacement back into a union position, not upon whether Defendant was permitted to oppose her displacement. Thus, the RLA does not preempt Plaintiff's claim.

they were managers in a different department, reported to different supervisors, and committed different wrongful conduct.

Plaintiff also alleges that her predecessor is a comparator showing pretext. Plaintiff alleges that Edwards committed more serious violations than Plaintiff but was suspended rather than terminated. (D.I. 64 at 17). While Plaintiff alleges that Edwards had a history of disciplinary problems, she has provided only a single disciplinary memorandum regarding a single incident to support this allegation. (D.I. 65-2, Ex. 39). Edwards is also not an appropriate comparator as he was not similarly situated. Edwards had a different supervisor than Plaintiff, and the nature of his misconduct was different. (D.I. 65-2, Ex. 33).

Wilkerson, A. Smith, and McHugh are not appropriate comparators. While each of the comparators has a similar job description (Wilkerson (Station Manager I), A. Smith (District Manager II), and McHugh (Station Manager II)), they each were disciplined by a different supervisor and were terminated from their management positions for different conduct than Plaintiff. (D.I. 65-2, Ex. 40, 43). Wilkerson was terminated for inadequate performance in management. (*Id.* at Ex. 40, 43). Smith was terminated for using offensive language with a union employee. (*Id.* at Ex. 43). McHugh was not terminated from his management position for misconduct, but as part of a reduction in force. (*Id.*). None of them had a history of insubordination. (*Id.*). Thus, Wilkerson, Smith, and McHugh are not appropriate comparators such that a reasonable jury could conclude that the proffered reasons were pretextual.

### b. **Inconsistencies**

Plaintiff also alleges that pretext can be shown because Defendant's proffered rationales for Plaintiff's termination are inconsistent or false.[5] "To avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that *each* of the employer's proffered non-discriminatory reasons was either a *post hoc* fabrication or otherwise did not actually motivate the employment action." *Fuentes*, 32 F.3d at 764 (cleaned up).

Plaintiff cites several documents and testimonial evidence that she alleges create a material dispute of fact as to pretext as to her termination from her management position. These include an email from Tara Tobias to Barry Melnkovic after Plaintiff's termination, an email from Donna DiDomenico to Mr. Melnkovic's assistant requesting a copy of the Senator Coons' letter for Plaintiff's termination file, and testimony that Plaintiff did not use racial epithets in the workplace. The emails from Ms. Tobias and Ms. DiDomenico do not permit a reasonable inference that Defendant's proffered rationale of insubordination, including the repeated submission of a reimbursement request for the Employee Appreciation lunch, "did not actually motivate the employment action." *Fuentes*, 32 F.3d at 764.

First, Plaintiff mischaracterizes the email from Ms. Tobias to Mr. Melnkovic. The email explains that Plaintiff had a history of "performance and behavioral issues" and explains the events surrounding the Employee Appreciation Day dispute. (D.I. 65-2, Ex. 30). In the email, Ms. Tobias states that, as Plaintiff has a previous history of writing to her Congressional representatives and persistence in appealing decisions she does not agree with, Ms. Tobias is sending the email so that

---

[5] These reasons were offered in Plaintiff's brief in support of her retaliation claim rather than her discrimination claim, but I will also address them here as Plaintiff indicated at oral argument that they applied to the discrimination claim as well. (Hr'g Tr. at 33:19-21, 49:3-5, 49:12-17).

Mr. Melnkovic can "be aware and have further context pertaining to the ongoing issues that led to her termination" in case "she writes another letter." (*Id.*). These statements do not permit an inference that Plaintiff's insubordination, poor past performance, and actions surrounding Employee Appreciation Day did not motivate her termination.

Second, Ms. DiDomenico's email asking for the Senator Coons' letter for Plaintiff's termination file also does not permit a reasonable inference of pretext. (D.I. 65-1, Ex. 24). Plaintiff has provided no evidence that the letter was actually used in Plaintiff's termination. Ms. Anderson testified that termination files generally include documents "relevant" to the termination. (D.I. 60 at App172). "Relevant" is not synonymous with causation. Therefore, it is not inconsistent with the proffered rationales for termination that Senator Coons' letter was included in the termination file.

Plaintiff has offered testimony that she did not use racial epithets in the workplace.[6] (D.I. 65-2, Ex. 33). But that is insufficient. Plaintiff has not provided evidence allowing "a factfinder reasonably to infer that *each* of the employer's proffered non-discriminatory reasons . . . did not actually motivate the employment action." *Fuentes*, 32 F.3d at 764. Therefore, Plaintiff has not shown that a genuine dispute of material fact exists as to pretext for termination from her management position.

Neither has Plaintiff provided evidence of inconsistencies to support a finding of pretext in Defendant's opposition to her displacement back into a union position. During the period that Plaintiff was "held out" of service, Plaintiff ignored instructions, returned to work, and entered an unauthorized area with an unauthorized person. (D.I. 65-2, Ex. 29 at 4-7). Amtrak conducted two

---

[6] The dispute concerns whether Plaintiff used racial epithets the morning that she was terminated. I note that there is undisputed testimony in the record indicating that the decision to terminate Plaintiff from her management position had been made before the purported use of racial epithets. (D.I. 65-1, Ex. 11 at 150:5-11).

separate investigations of Plaintiff's behavior—one as to her insubordinate behavior while in the Station Manager I position and the purported use of racial epithets and a second into Plaintiff's unauthorized access of the Cashier's Office. (*Id.* at Ex. 29). Each independent investigation resulted in the decision to terminate Plaintiff from any union position. (*Id.*). Plaintiff has not provided any evidence that would permit an inference of pretext as to the investigation into unauthorized access. Thus, as to the termination from union positions, Plaintiff has not met her burden to provide evidence from which a factfinder could reasonably infer "that *each* of the employer's proffered non-discriminatory reasons . . . did not actually motivate the employment action." *Fuentes*, 32 F.3d at 764. She therefore cannot survive summary judgment on her discrimination claim for termination. I will grant Defendant's motion.

### C. Retaliation Claim

To establish a prima facie case of retaliation, Plaintiff must show (1) that she was engaged in protected activity, (2) that she suffered an adverse employment action subsequent to or contemporaneously with such activity, and (3) that there is a causal link. *Garnett v. Bank of Am.*, 243 F. Supp. 3d 499, 513 (D. Del. 2017). The *McDonnell Douglas* burden-shifting analysis also applies. *Id.* Under the anti-retaliation provision of Title VII, "protected activity" includes participation in certain Title VII proceedings and opposition to discrimination made unlawful by Title VII. *Moore v. City of Phila.*, 461 F.3d 331, 341 (3d Cir. 2006). "[T]he employee must hold an objectively reasonable belief, in good faith, that the activity they oppose is unlawful under Title VII." *Id.* To show causation, there must be evidence that the decisionmaker knew of the protected activity. *Selvato v. SEPTA*, 658 F. App'x 52, 56 (3d Cir. 2016). Plaintiff may demonstrate causation through a broad array of evidence including "an employer's inconsistent explanation for taking an adverse employment action, a pattern of antagonism, or temporal proximity unusually

18

suggestive of retaliatory motive." *Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249, 260 (3d Cir. 2017) (internal citations and quotations omitted).

Plaintiff has not made out a prima facie case of retaliation because she has failed to establish that she engaged in protected activity. It is clear from the record that Plaintiff complained about her title classification and salary on multiple occasions. (D.I. 65-1, Exs. 13, 16, 25). However, the record does not contain evidence from which a reasonable jury could conclude that the Plaintiff's complaints were "opposition to an unlawful employment practice of [her] employer because [they] neither 'explicitly or implicitly' alleged that a protected characteristic was the basis for the adverse employment action. A general complaint of unfair treatment is insufficient to establish protected activity under Title VII." *Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*, 450 F.3d 130, 135 (3d Cir. 2006) (citing *Barber v. CSX Distrib. Servs.,* 68 F.3d 694, 702 (3d Cir. 1995)).

Plaintiff identifies three instances of purported protected activity: (1) her internal appeal of her pay designation in January 2015; (2) her contact with and the subsequent letter to Amtrak from Senator Coons' office in July 2015; and (3) an email sent on September 30, 2016. (D.I. 65-1, Exs. 13, 16, 25). There is no dispute that none of these activities explicitly alleged that she was protesting her title and pay because Plaintiff believed her salary was the result of sex discrimination. (*Id.*).

Neither do these actions implicitly allege that gender was the basis for the unequal pay. First, Plaintiff's January 14, 2015 internal appeal of her title and pay states, "According to what I was told is the criteria for how the jobs have been categorized, there seems to be a few discrepancies that are questionable. That is why I am appealing the title and zone of my position, Station Manager I." (D.I. 65-1, Ex. 13). The appeal also identified four comparator positions by

19

the stations managed. Three of the identified positions were held by men and one was held by a woman.[7] Plaintiff asserts that because she included male comparators the appeal implicitly alleged gender discrimination. I disagree. While certainly her appeal alleged that Plaintiff's job had been misclassified, there is not an implicit allegation that gender was the reason for the disparity given the inclusion of a position held by another woman.[8] The appeal merely appears to be "[a] general complaint of unfair treatment." *Barber*, 68 F.3d at 702.

Second, the letter from Senator Coons' office also does not contain an implicit allegation of gender discrimination. The letter sent from Senator Coons' office to Defendant read, "[Plaintiff] feels that her current classification, Station Manager I, was wrongly calculated. She cites a fellow employee who works for Amtrak at the Baltimore and Aberdeen stations in Maryland. [Plaintiff] says this employee is classified as a Station Manager II." (D.I. 65-1, Ex. 16). The Baltimore and Aberdeen position had previously been included in Plaintiff's internal appeal among several others, including one held by a woman. Plaintiff asserts that the identification of the Baltimore and Aberdeen position constitutes an implicit allegation of gender discrimination because the employee cited in the letter was a man. (Hr'g Tr. at 45:7-9). I disagree. The use of this single position as a comparison in Senator Coons' letter does not implicitly allege sex discrimination. Like *Barber*, where the Plaintiff wrote a letter to complain at his lack of promotion and the promotion of a "less qualified individual" but did not specifically identify age discrimination or the age of the person who received the promotion, 68 F.3d at 697, here, the letter from Senator

---

[7] Plaintiff alleges she identified five comparators in the appeal based upon the narrative reference to her predecessor, Ron Edwards. (Hr'g Tr. at 14:11-13). Regardless of whether she identified five or four comparators in her appeal, it does not change the impact of including a female comparator.

[8] At oral argument, Plaintiff stated that the sole female comparator included in the appeal had herself been engaged in a discrimination suit and therefore that her inclusion creates an implicit allegation of gender discrimination. (Hr'g Tr. at 44:18-22). However, there is no evidence in the record to support Plaintiff's assertion.

20

Coons' office is simply too vague to support an implicit allegation of sex discrimination. *See id.* at 702.

Third, neither does Plaintiff's email of September 30, 2016 constitute an implicit allegation of sex discrimination. In Plaintiff's email to her supervisor, Lauren Anderson, Plaintiff stated, "If I was paid as other Managers who operate at the "Out-Line Stations" (C3 and C4) were paid, then maybe I could afford to pay for this at my own expense. But because I am the only former District Manager who was reclassified as a C2, it's not in my budget." (D.I. 60 at 207). This is nothing more than "[a] general complaint of unfair treatment," which will not be treated as a charge of illegal sex discrimination. *Barber*, 68 F.3d at 702. At oral argument, Plaintiff stated that the "Out-Line Stations" referred to in this email were managed solely by men. (Hr'g Tr. at 46:7-17). There is no evidence in the record to support this statement. Even if the "Out-Line Stations" were solely managed by men, there would still not be an implicit allegation of gender discrimination. *Barber*, 68 F.3d at 702.

Thus, Plaintiff has not met her burden of establishing a prima facie case of retaliation and I will grant Defendant's motion on this claim.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is GRANTED. An accompanying order will be entered.

21